# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **JoAnn Wright,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 2:08-CV-992-VEH |
| | ) |
| **Michael J. Astrue,** | ) |
| **Commissioner, Social Security,** | ) |
| **Social Security, Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

### I.      INTRODUCTION

Plaintiff JoAnn Wright ("Wright") brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.  She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied her application for period of disability and disability insurance benefits.  Plaintiff timely pursued and exhausted her administrative remedies, and this case is now under submission to the Court.  For reasons discussed below, the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

## II.  FACTUAL AND PROCEDURAL HISTORY

Wright was born October 6, 1954; she has a ninth grade education and obtained her GED. (TR 29-30.) She last worked in December, 2005 as a school cafeteria manager, a position she held for nearly seventeen years. (TR 30-31.) She left her position due to surgery in her feet, back pain, fibromyalgia, and breathing problems, as well as incontinence caused by lifting. (TR 31.) Her daily activities include personal hygiene tasks, light cleaning, light cooking, taking care of her animals, and driving for short trips. (TR 30-31.) She receives short-term and long-term disability benefits through private insurance. (TR 30-31.)

Wright filed her application for period of disability and disability insurance benefits on April 17, 2006, alleging an onset date of December 5, 2005. (TR 11.) Her disabling conditions included asthma, fibromyalgia, rheumatoid arthritis, high blood pressure, acid reflux, and a soft tissue injury in her stomach. (TR 88.) The claim was initially denied and Wright requested a hearing, which was held on August 22, 2007. (TR 11.)

The presiding administrative law judge (ALJ) found that Wright had a combination of impairments that included fibromyalgia, urinary incontinence, obesity, history of foot surgeries, asthma, degenerative disc disease of the neck and low back, osteopenia of the lumbar spine, and gastroesphagal reflux and that these

impairments were severe in combination. (TR 13.) He further determined that Wright had the residual functional capacity (RFC) to perform light work with additional limitations such as the need for a sit/stand option, a restriction on working around hazardous machinery or unprotected heights, and a need to avoid concentrated exposure to fumes, odors, and dusts as well as extreme wetness and humidity. (TR 14.) He finally concluded that she needed brief unscheduled access to a restroom approximately every two hours. (TR 14.)

In reaching his conclusions, the ALJ relied upon the testimony of a vocational expert ("VE"), who testified that an individual with Wright's limitations could perform work such as a photocopy operator, a ticket marker, and a mail sorter. (TR 44-45.) Based on the VE's testimony, the ALJ found that Wright could perform work that existed in significant numbers in the national economy. (TR 20.) Additionally, the ALJ applied the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix II to aid in his determination of Wright's capacity to work. (TR. 19.) Using Medical-Vocational Rule 202.14, and taking into account her additional limitations, the ALJ found that Wright was not disabled. (TR 20.)

Wright requested review of the ALJ's hearing decision by the Appeals Council, who denied her request on April 26, 2008. (TR 2, 6.) Subsequently, Wright filed suit in this Court, seeking judicial review of the administrative decision under 42 U.S.C.

§ 405(g). (Doc. 1.)  This case has been fully briefed by both parties (Docs. 5-6), and it is now under submission to the Court.

## III.   STANDARD OF REVIEW

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is

supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## IV. ANALYSIS

In reviewing the final decision of the Commissioner, the Court is limited to determining whether the correct legal standards were applied and whether the final decision was supported by "substantial evidence." *See Lewis v. Callahan*, 125 F.3d 1436, 1429 (11th Cir. 1997).

### A. Legal Standards Applied

The ALJ used the appropriate legal standards in deciding Wright's case. First, to qualify for benefits, a claimant must suffer from an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). "Physical or mental impairment" is defined by the Social Security Act as "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Taking guidance from the statutory definitions, the applicable regulations provide for a five-step process by which an ALJ should evaluate the claimant's disability. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a), 416.920(a). If she is, the claimant is not disabled and the evaluation stops. *Id.* If she is not, the presiding official next considers the effect of all of her physical and mental impairments combined. *Id.* These impairments must be severe and must meet the duration requirements before a claimant will be found to be disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). The decision depends on the medical evidence in the record. If the claimant's impairments are not severe, the analysis stops. *Id.* Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. part 404, Subpart P, Appendix I. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments fall within this category, she will be found disabled without further consideration. *Id.* If they do not, the analysis proceeds to the fourth step.

The fourth step requires determination of whether the claimant's impairments prevent her from returning to her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). As to this criterion, the regulation states:

> If we cannot make a decision based on your current work activity alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled.
> *Id.*

Upon determination that the claimant cannot do any of the work she has done in the past, step five requires the court to consider the claimant's residual functional capacity, as well as the claimant's age, education, and past work experience in order to determine if she can do other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Applying the above-cited framework, the ALJ first found that Wright had not engaged in any substantial gainful activity since her onset date. (TR 13.) Next, the ALJ found that Wright had a host of severe impairments that included: fibromyalgia, urinary incontinence, obesity, history of foot surgeries, asthma, degenerative disc disease of the neck and low back, osteopenia of the lumbar spine, and gastroesphagal reflux. (TR 13.) The ALJ found that Wright's hypertension and alleged mental impairments were not severe impairments. (TR 13-14.) At step three, the ALJ found that none of the impairments or combination of impairments met a listed impairment

in Appendix I. (TR 14.) The ALJ then assessed Wright's RFC and determined that she could perform light work with additional limitations such as the need for a sit/stand option, a restriction on working around hazardous machinery or unprotected heights, and a need to avoid concentrated exposure to fumes, odors, and dusts as well as extreme wetness and humidity. (TR 14.) Based on this RFC determination, the ALJ found that Wright was unable to perform past relevant work. (TR 19.) However, the ALJ found that she could perform jobs that existed in significant number in the national economy by applying the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix II and the testimony of the VE. (TR 19-2.) In all respects, the ALJ applied the correct legal analysis. Wright has not challenged the decision in this regard; instead, she challenges the decision based on substantial evidence grounds, to which the Court now turns.

**B.    Substantial Evidence**

"Substantial evidence must do more than create a suspicion of the existence of the fact to be established." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (per curiam). The evidence must be "relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Ingram v. Commissioner of Social Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)). "Even if the evidence preponderates against the

[Commissioner]'s factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Ingram*, 496 F.3d at 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "[W]ithin this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable, and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983) (internal quotations and citations omitted).

    1.    <u>The ALJ was supported by substantial evidence in his credibility determinations.</u>

As a first basis for challenging the ALJ's decision, Wright argues that the ALJ improperly discredited her testimony as to the intensity, persistence, and limiting effects of her symptoms, since the ALJ recognized that her documented medical conditions could be expected to produce some of the alleged symptoms. (Doc. 5 at 10.)

The Eleventh Circuit's decision in *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir.1991), "requires that an ALJ apply a three part 'pain standard' when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms." *Id.* at 1223. "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms

the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). A decision that the pain standard is not met must be supported by substantial evidence. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir.1987).

"If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-1562 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir.1988)). When an ALJ issues "a clearly articulated credibility finding with substantial supporting evidence," it should not be disturbed. *Id*. at 1562 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir.1986). "The credibility determination does not need to cite 'particular phrases or formulations' but it cannot merely be a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [the] medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210-1211 (11th Cir. 2006) (quoting *Foote*, 395 F.3d at 1561; *Jamison v. Bowen*, 814 F.2d 585, 588-90 (11th Cir.1987)). When an ALJ fails to make a credibility finding, there are grounds to remand the decision. *Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir.1982).

Wright argues that her medical conditions could reasonably give rise to her

alleged symptoms, thereby satisfying the Eleventh Circuit's pain standard, as described above. (Doc. 5 at 11.) However, Wright appears to assume that if she satisfies the pain standard, the analysis ceases, and a decision is due to be rendered in her favor. (*See* Doc. 5 at 11, 13.) The Court disagrees with this conclusion since, even when the pain standard is satisfied, an ALJ may nevertheless determine that pain testimony is simply not credible, provided that the ALJ articulates specific reasons for doing so. *See Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988) ("[S]ubjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the claimant complains is sufficient to sustain a finding of disability. If the [ALJ] discredits such testimony, he must articulate explicit and adequate reasons.") (internal quotations and citations omitted).

In the instant case, this is precisely what the ALJ did. (*See* TR 14-15.) The ALJ found that the pain standard was satisfied, but ultimately discredited Wright's testimony:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(TR 15.) The ALJ reached this conclusion after conducting a systematic, symptom by symptom account of Wright's impairments. (TR 15-18.) In her brief, Wright attempts to explain why several of the ALJ's conclusions are not supported by substantial evidence, citing medical records that allegedly support her arguments. (Doc. 5 at 11-13.) However, as discussed in detail below, each of the records supposedly supporting her conclusion have either been superseded by later records from the same physician, or are cited out of context.

As to her incontinence, Wright suggests that the ALJ improperly discredited testimony of the frequency and the severity of her incontinence problems. (Doc. 5 at 11.) In support of her argument she claims that her treating physician, Dr. Varner, stated that because of her bladder problems, she could only perform sedentary tasks, and could not lift anything over fifteen pounds. (*Id.* (citing TR at 377-378).) Dr. Varner made these recommendations in May, 2005. (*Id.*) However, subsequently, in September, 2006, Dr. Varner stated that Wright had no restrictions from "a uro-gynecological standpoint," (TR 581) and he modified the fifteen pound lifting restriction to a twenty pound restriction. (TR 34, 40-41.) Thus, the ALJ was supported by the most recent statement of Wright's treating physician in concluding that she had no functional restrictions on account of her urinary incontinence. (TR 17.)

Next, as to her fibromyalgia/fatigue problems, Wright quotes from a record dated May, 2006, of her treating physician for this symptom, Dr. Blackburn, stating that she "clearly has fibromyalgia." (Doc. 5 at 12 (quoting TR 572.) There is no dispute that Wright has fibromyalgia; the only question is whether its effects render Wright disabled. Notwithstanding the fact that a diagnosis of fibromyalgia alone does not confirm its disabling effect, Dr. Blackburn stated, in a later document, dated July, 2006, that her pain had become "more manageable" due to trigger point injections. (TR 571.) A record dated November, 2006, states that her epidural block was "quite helpful." (TR 634.) Further, the ALJ noted that she had not sought treatment for nearly a year between November, 2006, and August, 2007. (TR 17; 633-634.) Although Wright claims that it was improper for the ALJ to consider the infrequency of her doctor visits for this symptom, applicable regulations clearly state otherwise, since SSR 96-7p, in explaining factors for an ALJ to consider in assessing credibility, recognizes that "[an] individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." 1996 WL 374186 at *7 (SSR July 02, 1996). Thus, the ALJ was supported by substantial evidence in his conclusions regarding Wright's fibromyalgia symptoms.

As to Wright's back pain, she seems to argue that, because she received epidural injections from her treating physician, Dr. Carter, the pain must have been severe. (Doc. 5 at 13.) While this might be a permissible inference as to the severity of her symptoms in many cases, *see* SSR 96-7p, 1996 WL 374186 at *7, Dr. Carter stated that she received a "great response" from the injections, and that she did "remarkably well." (TR 638-639.) Thus, Wright's own treating physician confirms that the treatments worked. Wright cannot undermine the ALJ's credibility determination on this basis, since the ALJ articulated specific reasons for discrediting her testimony, and those reasons were supported by substantial evidence.

    2.    <u>The ALJ did not substitute his judgment for that of a medical provider in addressing Wright's respiratory ailments.</u>

With respect to her respiratory conditions, Wright argues that the ALJ made "unsupported findings" and "effectively substituted his judgment for that of a medical provider." (Doc. 5 at 15.) In support of this argument, she cites conclusions from physicians who treated her asthmatic conditions as indicating that she was permanently disabled. (Doc. 5 at 13.) The cited conclusions are included on Report of Disability forms for the Retirement Systems of Alabama. (TR 654-659.) These records come from her allergist, Dr. Ravipati, and her pulmonologist, Dr. Thomas. (*Id.*) The forms provided by Wright only opine that she could not perform her job as

a cafeteria worker; they do not state that she cannot perform any occupation. (*Id.*) Her treating physicians provided detailed reasons why Wright could not perform her former job as a cafeteria worker. Specifically, her allergist stated that she could not work around strong odor or dust. (TR 658.) Her pulmonologist stated that Wright could not work around steam, dust, or chemicals. (TR 655.) Rather than rejecting these conclusions, the ALJ relied heavily on them, incorporating the opinions into his RFC determination. (TR 18.)

### 3. The ALJ did not err in considering Wright's daily activities.

Wright next contends that the ALJ improperly considered her daily activities in determining that she was not disabled. (Doc. 5 at 14.) In support of her contention, Wright cites the Eleventh Circuit's decision in *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997) and states that "participation in everyday activities of short duration do not disqualify a plaintiff from disability." (Doc. 5 at 14.) The ALJ did not err in considering Wright's daily activities; *Lewis* only provides that an ALJ may not use daily activities of a short duration to discredit a treating physician's diagnosis. 125 F.3d at 1441. In *Lewis*, the Eleventh Circuit found that an ALJ erred when he discredited a treating physician's finding that a claimant could perform sedentary work by relying in part on "everyday activities of short duration, such as housework or fishing." *Id.* The court noted that participation in these activities did

not "disqualif[y] [the] claimant from disability [nor were they] inconsistent with the limitations recommended by [the claimant's] treating physician." *Id.* *Lewis* simply does not apply in the instant case, because the ALJ did not use Wright's daily activities to discredit the testimony of a treating physician; rather, he recognized that Wright's daily activities were consistent with her medical records. (TR 18-19.) Further, applicable regulations indicate that an ALJ should consider daily activities in making a disability determination. *See* 20 C.F.R. § 404.1529; *see also Marcia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (noting that "at the fourth step of the sequential evaluation process," the ALJ may consider daily activities). Thus, the ALJ did not err in considering Wright's daily activities.

    4.    <u>The ALJ did not err in his RFC determination</u>.

Finally, Wright argues that the ALJ erred in his RFC determination by failing to credit the opinion of Wright's treating physician, Dr. Varner, and by improperly applying the Medical-Vocational Guidelines (grids). (Doc. 5 at 15-16.)

As to Dr. Varner's opinion, the ALJ's decision was not inconsistent with Dr. Varner's most recent statement in Wright's medical records. The law of the Eleventh Circuit is that "[a]n administrative law judge must accord 'substantial' or 'considerable weight to the opinion of a claimant's treating physician unless 'good cause' is shown to the contrary. *Broughton v. Heckler*, 776 F.2d 960, 961-962 (11th

Cir. 1985). As explained below, the ALJ afforded the appropriate weight to Dr. Varner's opinions.

Dr. Varner's opinion as to the effect Wright's incontinence evolved as her condition improved. In July, 2005, Dr. Varner noted that "[i]t is strongly suggested that [Wright] not do heavy lifting (lifting over 15 lbs) <u>long term</u>." (TR 378 (emphasis in original).) In October, 2005, Dr. Varner submitted a disability form to Wright's disability insurance provider, and indicated that she could only perform sedentary work. (TR 377.) At the same time, Dr. Varner also provided a letter stating, "With lifting activity, [Wright] has a significant hygiene issue . . . . I have suggested that she try to find a job that does not require any heavy lifting. I think she can perform most jobs with normal activity or more sedentary jobs such as secretarial or clerical type." (TR 382.) However, in September, 2006, Dr. Varner stated, in an Alabama Retirement Systems Disability form, that Wright had no restrictions "from a urogynecological standpoint" (TR 581.) Further, Dr. Varner also clarified that her prior lifting restriction was limited to twenty pounds, and not fifteen, as he had earlier found. (TR 18, 34, 40-41.) The Department of Labor's *Dictionary of Occupational Titles*, Appx. C, explains that light work consists of lifting up to twenty pounds occasionally. Thus, to the extent that Dr. Varner's earlier opinions restricted Wright to sedentary work only, they were subsequently modified by his most recent

statement, finding that Wright had no restrictions at all with respect to her incontinence, as well as his clarification that Wright could lift up to twenty pounds. The ALJ, relying on the most recent evidence, stated that he gave "great weight" to the opinions of Wright's treating physicians and concluded that Wright could perform light work. (TR 18.) Substantial evidence supported this determination, and the ALJ did not discredit Dr. Varner's testimony in making his RFC determination. In fact, the ALJ would have needed to discredit Dr. Varner's most recent opinion to find that Wright was capable only of sedentary work.

   As a corollary to her argument that the ALJ improperly found her to be capable of light work, Wright argues that the ALJ should have found her to be disabled under the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. II, § 201.14, which would find Wright to be disabled <u>if she were limited to sedentary work</u>. (Doc. 5 at 16.) However, as previously discussed, Wright has not been limited to sedentary work, thus this provision does not apply. Instead, the ALJ applied § 202.14, which suggested a finding that Wright was not disabled. Because the ALJ found that Wright had additional limitations that "erode the unskilled light occupations base," he sought the testimony of a vocational expert, who testified as to the job titles that Wright could perform, given her limitations. (TR 19-20.) Since Wright's argument depends upon a finding that she could only perform sedentary work, and the Court has rejected

this argument, her assertion that the ALJ improperly applied the Medical-Vocational Guidelines is without merit.

## V. CONCLUSION

In light of the above, the Court finds that the ALJ's decision both applied the correct legal standards and was supported by substantial evidence. The decision is therefore due to be **AFFIRMED**. An Order consistent with this Memorandum Opinion will be entered contemporaneously.

**DONE** and **ORDERED** this the 23rd day of March, 2009.

								  *VEHopkins*
								  **VIRGINIA EMERSON HOPKINS**
								  United States District Judge